THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AARON HERMAN and LEAH HERMAN, a married couple, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 2:26-cv-01674-BAT<br><br>**AMAZON.COM, INC.'S MOTION TO DISMISS COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: OCTOBER 2, 2026<br><br>ORAL ARGUMENT REQUESTED |



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FL 3800
SEATTLE, WA 98104-1157

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Customers can sign up for recurring deliveries through Amazon's Subscribe & Save program and receive a discount. ..... 2

B. When customers sign up for Subscribe & Save, they agree that prices can change any time. ..... 2

C. Plaintiffs ordered coffee through Subscribe & Save, and for each order received the coffee at the prices they agreed to pay. ..... 4

III. LEGAL STANDARDS ..... 5

IV. ARGUMENT ..... 6

A. Plaintiffs lack Article III standing because they do not plausibly allege any "overpayment" for the coffee they purchased or any threat of future harm. ..... 6

B. Plaintiffs fail to state a claim under the Washington Consumer Protection Act (CPA) because they fail to allege any deception, unfairness, injury, or causation. ..... 10

1. Plaintiffs fail to allege deception because no reasonable consumer could have believed Subscribe & Save pricing was static and Amazon did not omit any material information about pricing. ..... 10

2. Plaintiffs do not allege that the fully disclosed prices they paid were somehow unfair. ..... 16

3. Plaintiffs cannot allege an injury because they received the coffee they ordered at the disclosed price. ..... 19

4. Amazon's contract terms and disclosures foreclose Plaintiffs' purported reliance on static or lowest-available pricing. ..... 20

C. Dismissal should be without leave to amend because Plaintiffs cannot cure the fundamental deficiencies in their CPA theories. ..... 21

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Amazon Serv. Fee Litig.*,
2024 WL 3460939 (W.D. Wash. July 18, 2024) ....21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....6

*Barnett v. E:Space Labs LLC*,
2018 WL 3364660 (D. Or. July 10, 2018) ....18

*Beagle v. Amazon.com, Inc.*,
2024 WL 4028290 (W.D. Wash. Sept. 3, 2024) ....17

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) ....11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....6

*Beyer v. Symantec Corp.*,
2019 WL 935135 (N.D. Cal. Feb. 26, 2019) ....8

*Blackburn v. Etsy, Inc.*,
2023 WL 9105662 (C.D. Cal. Oct. 12, 2023) ....8

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014) ....19

*Borowsky v. Hamilton Beach Brands, Inc.*,
788 F. Supp. 3d 1092 (N.D. Cal. 2025) ....7

*Brown v. Brita Prods. Co.*,
172 F.4th 1113 (9th Cir. 2026) ....16

*Brown v. Nature's Path Foods, Inc.*,
2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ....8

*Bush v. Mondelez Int'l, Inc.*,
2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) ....18

*Cahen v. Toyota Motor Corp.*,
717 F. App'x 720 (9th Cir. 2017) ....7, 8

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ....5

*Chapman v. Pier 1 Imps. (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ....................9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)....................5

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
2021 WL 3878654 (9th Cir. Aug. 31, 2021)....................9

*Cole v. Keystone RV Co.*,
2021 WL 3111452 (W.D. Wash. July 22, 2021), *aff'd*, 2022 WL 4234958 (9th Cir. Sept. 14, 2022)....................12, 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................9

*Demopolis v. Galvin*,
786 P.2d 804 (Wash. Ct. App. 1990)....................20

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ....................6, 14

*Desrys v. Traditional Medicinals, Inc.*,
2026 WL 1387413 (N.D. Cal. May 18, 2026)....................7

*Dix v. Nova Benefit Plans, LLC*,
2015 WL 12859221 (C.D. Cal. Apr. 28, 2015) ....................21

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ....................10, 11

*In re Estate of Storey v. Amazon*,
2025 WL 887373 (W.D. Wash. Mar. 21, 2025) .................... 11, 12, 13

*Fabozzi v. StubHub, Inc.*,
2012 WL 506330 (N.D. Cal. Feb. 15, 2012) ....................11, 12

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ....................12 n.4

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ....................21

*Ghaznavi v. De Longhi Am., Inc.*,
2023 WL 4931610 (S.D.N.Y. Aug. 2, 2023)....................7, 8

*Girard v. Toyota Motor Sales, U.S.A., Inc.*,
316 F. App'x 561 (9th Cir. 2008) ....................20

*Gonzalez v. United States Immigr. & Customs Enf't*,
975 F.3d 788 (9th Cir. 2020) ....................................................................................9

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
935 P.2d 628 (Wash. Ct. App. 1997)......................................................................10

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023)...............................................6, 9, 17, 21

*Green v. United States*,
630 F.3d 1245 (9th Cir. 2011) ..........................................................................5 n.2

*Haywood v. Amazon.com, Inc.*,
2023 WL 4585362 (W.D. Wash. July 18, 2023) ......................................13, 17, 21

*King v. Amazon.com Servs. LLC*,
2026 WL 628261 (W.D. Wash. Mar. 6, 2026) ..................................17, 18, 20 n.6

*Kolar v. Nespresso USA, Inc.*,
2025 WL 1717279 (C.D. Cal. June 13, 2025) ...................................................7, 8

*Krakauer v. Recreational Equip., Inc.*,
2024 WL 1494489 (W.D. Wash. Mar. 29, 2024) ......................................................8

*Kumar v. Koester*,
131 F.4th 746 (9th Cir. 2025) ..................................................................................5

*Marquez v. Amazon.com, Inc.*,
2021 WL 6060670 (S.D. Fla. Nov. 18, 2021), *aff'd*, 69 F.4th 1262 (11th Cir. 2023) ..........................................................................................................13

*Mason v. Mortg. Am., Inc.*,
792 P.2d 142 (Wash. 1990)...............................................................................20 n.6

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ....................................................................................7

*Millam v. Energizer Brands, LLC*,
2022 WL 19001330 (C.D. Cal. Dec. 9, 2022), *aff'd*, 2024 WL 2988210 (9th Cir. June 14, 2024)..............................................................................................13

*Montes v. SPARC Grp., LLC*,
586 P.3d 999 (Wash. 2026)...........................................................................1, 19, 20

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .................................................................10, 12, 21

*Morehouse v. Apple, Inc.*,
2026 WL 2111332 (N.D. Cal. July 22, 2026).............................................................7

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ....................7

*Nicholas v. Amazon.com, Inc.*,
2025 WL 2830693 (W.D. Wash. Oct. 6, 2025) ....................14, 8

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009)....................10

*Phillips v. Apple, Inc.*,
2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ....................8

*Romoff v. Gen. Motors LLC*,
574 F. Supp. 3d 782 (S.D. Cal. 2021), *aff'd*, 2023 WL 1097258 (9th Cir. Jan. 30, 2023) ....................7

*Rydman v. Champion Petfoods USA, Inc.*,
2023 WL 3506133 (W.D. Wash. May 17, 2023)....................10

*Savage v. Glendale Union High Sch.*,
343 F.3d 1036 (9th Cir. 2003) ....................5 n.2

*Smith v. Intel Corp.*,
745 F. Supp. 3d 853 (N.D. Cal. 2024) ....................7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................5

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)....................9

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................5

*Syed v. M-I, LLC*,
853 F.3d 492 (9th Cir. 2017) ....................18

*Tash v. Vision Serv. Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026)....................9

*Taylor v. Amazon.com, Inc.*,
2024 WL 3326430 (W.D. Wash. July 8, 2024) ....................19

*Taylor v. Amazon.com, Inc.*,
2025 WL 104381 (W.D. Wash. Jan. 15, 2025).................... *passim*

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ....................5

*Wood v. Blue Diamond Growers*,
722 F. Supp. 3d 554 (D. Md. 2024) ........................................................ 11

*Young v. Toyota Motor Sales, U.S.A.*,
442 P.3d 5 (Wash. Ct. App. 2019), *aff'd*, 472 P.3d 990 ........................................ 15, 16

*Young v. Toyota Motor Sales, U.S.A.*,
472 P.3d 990 (Wash. 2020) ........................................................ 20

**Rules**

Fed. R. Civ. P. 9(b) ........................................................ 5, 14

Fed. R. Civ. P. 12(b)(1) ........................................................ 5

Fed. R. Civ. P. 12(b)(6) ........................................................ 5

## I. INTRODUCTION

Using the popular Amazon Subscribe & Save program, Plaintiffs Aaron and Leah Herman subscribed to recurring coffee deliveries at a discount. Through contract terms and disclosures, Amazon explained to Plaintiffs—including at the point of subscription—that prices for Subscribe & Save items can change any time for any reason. Amazon also informed Plaintiffs they could cancel their subscription any time and emailed them before every delivery to confirm the price. ***For each order, Plaintiffs received the coffee at the disclosed price with the expected discount***.

Plaintiffs nevertheless contend they were somehow misled about Subscribe & Save pricing and overpaid when the price of the coffee allegedly increased over multiple deliveries. They inexplicably assert—despite their contract with Amazon and other disclosures—that they believed Subscribe & Save prices would remain the same and they were entitled to receive the lowest-available price from any seller on Amazon.com. Relying on these assumptions, Plaintiffs bring a single claim for violation of the Washington Consumer Protection Act (CPA).

At the outset, Plaintiffs lack Article III standing because they allege no injury. They received the coffee they intended to buy at the price they agreed to pay; a price increase alone is not an injury, especially when Plaintiffs agreed to potential price changes for Subscribe & Save orders. And recent Washington Supreme Court authority confirms that a consumer who buys a product at a disclosed price—without any allegation that the product is worth objectively less—is not "injured" under the CPA, even when the plaintiff alleges they were misled into buying it. *See Montes v. SPARC Grp., LLC*, 586 P.3d 999 (Wash. 2026).

But even if Plaintiffs could establish an injury under Article III or the CPA, their claim would still fail. Plaintiffs do not allege any deceptive or unfair practice because they could not have reasonably believed Subscribe & Save prices would remain static or that Amazon promised lowest-available prices. Nothing Plaintiffs cite supports these conclusions, and Plaintiffs' contract with Amazon plainly allows for price changes. Nor could Plaintiffs have reasonably relied on any such belief as a reason to subscribe.

Because Plaintiffs' claim is factually implausible and legally unsupportable, the Court should dismiss with prejudice.

## II. BACKGROUND

### A. Customers can sign up for recurring deliveries through Amazon's Subscribe & Save program and receive a discount.

Customers can sign up for regularly scheduled deliveries of eligible items and receive discounts on those items through Amazon's Subscribe & Save program. *See* Complaint ("Compl."), ECF No. 1 (May 15, 2026) ¶ 3.58. Subscribe & Save-eligible items may be sold by Amazon or third-party sellers. *See id.*

Product detail pages on Amazon.com show available offers for an item and identify the sellers of those offers. *See id.* ¶ 3.64. A Subscribe & Save price on a product detail page reflects any applicable discount (typically 5% to 15%). *Id.* ¶ 3.58. If a discount applies, the Subscribe & Save price will usually be lower than the price for a one-time purchase of the same item. *See id.* ¶¶ 3.61–3.63.

Customers can modify or cancel Subscribe & Save subscriptions any time for any reason. *See id.* ¶ 3.74; *see also id*. ¶ 3.69 (reproducing subscription screen stating "No fees. Skip or cancel anytime"). Before each recurring delivery, Amazon emails customers to remind them about their upcoming order, inform them of any price changes, and provide information about how to cancel, modify, or skip their order. *See id*. ¶¶ 3.70, 4.11–4.13; *see also* Declaration of Veenu Taneja in Support of Motion to Dismiss ("Taneja Decl.") ¶ 17, Ex. 4 (Subscribe & Save FAQ Page).

### B. When customers sign up for Subscribe & Save, they agree that prices can change any time.

To order through Subscribe & Save, users must have an Amazon account and agree to the Amazon Conditions of Use ("COU") and the Amazon Subscribe & Save Terms & Conditions ("Subscribe & Save Terms").[1] Taneja Decl. ¶¶ 5–7; *id.* ¶ 8, Ex. 1 (COU); Taneja Decl. ¶ 10, Ex. 2 (Subscribe & Save Terms) at 1 (explaining that "your use of the Amazon.com website is also governed by our Conditions of Use" and that "[b]y placing an order through Subscribe & Save, you accept these Terms, conditions, limitations and requirements"). Customers agree to the COU

[1] Users agree to other terms governing their purchases and Amazon services, and Amazon reserves all rights as to the enforcement and applicability of those terms to Plaintiffs and all members of the proposed class.

when they create an Amazon account, and again each time a user signs in to Amazon.com. Taneja Decl. ¶ 6; *see also id.* ¶ 7 (explaining the COU are available in hyperlinked text).

Customers agree to the Subscribe & Save Terms each time they subscribe to an item. Taneja Decl. ¶ 9. Amazon informs customers before they select "Confirm subscription" that "[b]y placing your order you agree to Amazon's privacy notice, conditions of use, and the Subscribe & Save Terms & Conditions." *Id.* ¶ 11; see also ¶ 15, Ex. 3 at 1.




*Id.* ¶ 15, Ex. 3 at 1 (sign-up screen with boxes to emphasize "Confirm subscription" buttons).

Amazon also informs customers they "can cancel at any time" and provides a hyperlink to review the Subscribe & Save Terms. *See* Compl. ¶ 3.69; *see also id.* ¶ 3.74; Taneja Decl. ¶ 10, Ex. 2 at 2 (stating customers "**may cancel your Subscribe & Save subscription at any time or skip your next delivery before it ships**"). Customers cannot complete their subscription without selecting the "Confirm subscription" button by this information. Taneja Decl. ¶ 14.

The Subscribe & Save Terms explain that "**[w]e may change the price for a Subscribe & Save subscription at any time for any reason**" and "[i]nformation about changes to price will be available to you on the Manage Your Deliveries page." Taneja Decl. ¶ 10, Ex. 2 at 2 (emphasis added). They confirm that "**[y]ou may cancel your Subscribe & Save subscription at any time or skip your next delivery before it ships via the Manage Your Deliveries page.**" *Id*. (emphasis in original).

Amazon also provides information about the program on a "Frequently Asked Questions" page, which is accessible through a hyperlink on the product detail page. *See* Taneja Decl. ¶ 16; *see also id.* ¶ 17, Ex. 4 (Subscribe & Save FAQs); *see also* Compl. ¶ 3.62 (showing hyperlink from which Subscribe & Save FAQ page is accessible). The FAQ page explains that "[i]n advance of each delivery, we will send you a reminder email showing the item price and any applicable discount for your upcoming delivery. **The price of the item may decrease or increase from delivery to delivery, depending on the Amazon.com price of the item at the time we process your order**." Subscribe & Save FAQs at 1 (emphasis added). The page also discloses that "**individual product prices can go up or down over time**" and tells customers they "can review your subscription price and edit or cancel your subscription at any time." *Id.* at 2 (emphasis added).

### C. Plaintiffs ordered coffee through Subscribe & Save, and for each order received the coffee at the prices they agreed to pay.

In February 2024, Plaintiffs enrolled in Subscribe & Save to purchase "Lavazza Espresso Ground Coffee" from Amazon every two months. Compl. ¶ 4.2. They allege that when they first subscribed, the price of the coffee was $19.53 and "the 15% subscribe and save discount made the final price $16.60." *Id.* ¶ 4.4. Plaintiffs received additional deliveries in April, July, and October 2024 at allegedly higher prices. *Id.* ¶¶ 4.8–4.9.

Plaintiffs admit that Amazon "sends emails to consumers before each Subscribe & Save order is fulfilled, notifying consumers of their upcoming delivery and the price they are to pay." *Id.* ¶ 3.77. And they concede that before their October 2024 delivery, Amazon sent them an email titled "Price changes: review your upcoming delivery." *Id.* ¶ 4.11. The email identified the previous price and the new price (with 15% discount) for the October order. *Id.* ¶¶ 4.11–4.13. The

email also reminded Plaintiffs they could manage their order, but Plaintiffs did not cancel, modify, or skip it. *Id.* ¶ 4.13. Plaintiffs further acknowledge that they could review available offers on Amazon.com and select a different offer for the same product if they chose to do so: on the day they received the email about their upcoming October 2024 delivery, Plaintiffs allege they also purchased the coffee from a different seller on Amazon.com at a lower price. *See id.* ¶¶ 4.17–4.18.

Plaintiffs further admit that Amazon informs customers it may "change the price for a Subscribe & Save subscription at any time for any reason," *id.* ¶ 3.71 (emphasis omitted), and that "Plaintiffs . . . saw, read, and reasonably relied on Amazon's Subscribe & Save Program prices and advertisements when purchasing Subscribe & Save items," *id.* ¶ 6.14. Despite these admissions, Plaintiffs contend they believed their "original [subscription] price" would be "consistent with anticipated future prices" and Amazon would "continuously secure a price for the product at or near the lowest available." *Id.* ¶¶ 4.5, 6.9. They contend they "paid more than they should have" for their orders, *id.* ¶ 4.19, and assert a single cause of action under the CPA, *id.* ¶¶ 6.1–6.22.

## III. LEGAL STANDARDS

Article III's "case-or-controversy requirement" obligates a plaintiff to "establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citation modified). The "irreducible constitutional minimum of standing consists of three elements": (1) "an injury in fact," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) that "is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). "Injury in fact is the threshold requirement for standing and can be difficult to satisfy." *Kumar v. Koester*, 131 F.4th 746, 751 (9th Cir. 2025). The party invoking federal jurisdiction has the burden of establishing standing. *Spokeo*, 578 U.S. at 338. If they do not meet that burden, the court lacks subject matter jurisdiction and must dismiss. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).[2]

[2] In evaluating a Rule 12(b)(1) motion, the court may consider materials beyond the pleadings when there is a factual challenge to subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a plaintiff fails to plead facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider documents that are incorporated by reference in the complaint or otherwise subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also* Amazon's Notice of Incorporation by Reference and Request for Judicial Notice ("NIR/RJN") (Aug. 14, 2026).

Under Federal Rule of Civil Procedure 9(b), "a party alleging fraud must state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (citation modified). Rule 9(b) applies to CPA claims "alleging that the defendant intentionally misled the public," as Plaintiffs do here. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023) (citation modified); *see also* Compl. ¶¶ 6.12–6.14 (alleging Amazon intended to misrepresent information about Subscribe & Save pricing).

## IV. ARGUMENT

### A. Plaintiffs lack Article III standing because they do not plausibly allege any "overpayment" for the coffee they purchased or any threat of future harm.

Plaintiffs contend they overpaid for the coffee because prices for their recurring orders allegedly increased from the initial subscription price. *See* Compl. ¶¶ 6.12, 6.18. But they do not plausibly allege any facts supporting this purported overpayment or that any representation or omission caused them to overpay. Plaintiffs therefore fail to allege any injury in fact and cannot meet their burden of establishing Article III standing. The Court should dismiss on this basis alone.

---

Accordingly, "proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court." *Green v. United States*, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011). The Court may therefore consider Amazon's terms and disclosures. *See* Taneja Decl. ¶¶ 8, 10, 15, 17, Exs. 1–4.

To establish standing for an alleged overpayment, a plaintiff cannot just assert that they overpaid. *See Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017) (confirming a plaintiff must provide more than "conclusory allegations that their [products] are worth less"); *Desrys v. Traditional Medicinals, Inc.*, 2026 WL 1387413, at *2 (N.D. Cal. May 18, 2026) ("While paying a price premium can be a cognizable Article III injury, Plaintiffs may not rely on a bare legal conclusion to assert injury-in-fact." (citation modified)). They must allege, at a minimum, facts showing that the product they bought was "worth objectively less than what [they] paid" or had "a hidden defect." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706–07 (9th Cir. 2020); *see also Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) (explaining that a plaintiff must allege "how much they would have paid for [the product] absent the alleged deception" and "any other details regarding the price premium"); *Morehouse v. Apple, Inc.*, 2026 WL 2111332, at *2 (N.D. Cal. July 22, 2026) ("[I]n overpayment theory cases, the majority of courts have consistently required plaintiffs to allege that the products contain an actual defect and are allegedly worth less than what the consumer paid to demonstrate an economic injury." (citation modified)).

Nor can consumers who purchase products on "fully disclosed" terms plausibly allege they overpaid and were injured, **even if they attempt to allege the product was defective or worth less**. *Ghaznavi v. De Longhi Am., Inc.*, 2023 WL 4931610, at *6 (S.D.N.Y. Aug. 2, 2023). Consumers who know the terms of their purchases and still decide to make them have not somehow been deceived into overpaying. *See, e.g.*, *Kolar v. Nespresso USA, Inc.*, 2025 WL 1717279, at *4 (C.D. Cal. June 13, 2025) (holding that "[o]verpayment injuries are premised on deceit" and "a plaintiff cannot establish an overpayment injury where the product at issue disclosed the purported defect at the time of purchase, because they cannot form a reasonable expectation that the product was worth more" (citation modified)); *Borowsky v. Hamilton Beach Brands, Inc.,* 788 F. Supp. 3d 1092, 1096 (N.D. Cal. 2025) (similar where warranty terms "disclose[d]" the asserted "defect" that allegedly caused an overpayment injury).

Here, Plaintiffs merely assert that they "paid more than they should have." Compl. ¶ 4.19. They do not allege that the coffee was defective or worth less than they paid. *See McGee*, 982 F.3d at 707 (explaining that such allegations are required to plead an overpayment injury under Article

III); *Blackburn v. Etsy, Inc.*, 2023 WL 9105662, at *4 (C.D. Cal. Oct. 12, 2023) (collecting cases and explaining that "a conclusory allegation of a price premium [i.e., an overpayment], without supporting well-pleaded facts, fails to satisfactorily allege standing"). Their conclusory assertion of an "overpayment" without any supporting allegations therefore falls far short of showing any injury. *See Cahen*, 717 F. App'x at 723 (affirming that conclusory allegations the plaintiffs "would have paid less for [their products]" were insufficient); *Krakauer v. Recreational Equip., Inc.*, 2024 WL 1494489, at *7 (W.D. Wash. Mar. 29, 2024) (concluding no Article III standing because the plaintiff's "bald assertion that he would have paid less or not purchased the raincoat is unaccompanied by facts showing what cheaper alternative products he might have purchased"); *Beyer v. Symantec Corp.*, 2019 WL 935135, at *4 (N.D. Cal. Feb. 26, 2019) (similar where complaint contained only "a bare assertion that [the plaintiffs] overpaid for the Affected Products").

Moreover, Plaintiffs' assertion that they would not have bought the coffee at all had they "known" the purported "truth" about Subscribe & Save pricing is likewise insufficient. *See* Compl. ¶ 6.18.1. The terms of their purchases were fully disclosed: Amazon explained—and Plaintiffs agreed—that Subscribe & Save prices could increase, and Amazon provided the specific price for each order. *See id.* ¶ 3.74; *see also id.* ¶¶ 3.69, 4.11–4.13; Taneja Decl. ¶ 10, Ex. 2 (Subscribe & Save Terms). Because Plaintiffs received what they paid for on fully disclosed terms, they cannot possibly allege any injury under Article III. *See, e.g.*, *Ghaznavi*, 2023 WL 4931610, at *6; *Kolar*, 2025 WL 1717279, at * 4.

Plaintiffs also fail to plausibly allege that Amazon caused the supposed overpayment. "[A]ctual reliance is required to demonstrate causation for purposes of Article III standing when the plaintiffs assert that their injury is the result of deceptive misrepresentations or omissions." *Phillips v. Apple, Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016). Plaintiffs contend they "saw, read and reasonably relied on Amazon's Subscribe & Save Program prices and advertisements" and "product listing" in deciding to subscribe, but they do not identify *any specific statement* they allegedly saw or *how* any specific statement supposedly induced their subscription. Compl. ¶¶ 6.14 (first quotation), 4.3 (second quotation). Without alleged "facts allowing the Court

to reasonably infer that Plaintiffs made their purchasing decisions based on" an Amazon statement or omission, any injury is not fairly traceable to Amazon. *Brown v. Nature's Path Foods, Inc.*, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022); *see also Tash v. Vision Serv. Plan*, 2026 WL 1012680, at *5 (E.D. Cal. Apr. 14, 2026) (dismissing for lack of Article III standing where plaintiff alleged overpayment but "d[id] not allege [their] belief stemmed from any representations by Defendant" and so the "injury [was] not traceable to Defendant's conduct"); *cf. Gray*, 653 F. Supp. 3d at 860 (concluding plaintiffs failed to allege causation under the CPA because the "Complaint contains no allegations that Plaintiffs viewed or heard any of those statements or were otherwise aware of them at the time they purchased their [] devices").

Even if Plaintiffs could establish standing for their CPA claim generally (and they cannot), they still fail to show standing for their request for injunctive relief. *See* Compl. ¶¶ 6.21, 7.3; *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (holding that a plaintiff "bears the burden of showing that he [or she] has standing for each type of relief sought"). Article III standing for injunctive relief requires a plaintiff to also allege "a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation modified). "[P]ast injury does not provide standing to seek prospective injunctive relief absent a sufficient likelihood that the plaintiff will again be wronged in a similar way." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (internal citations omitted). Accordingly, a plaintiff must allege that they would like to make a similar purchase or use the same service in the future. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) (holding that a plaintiff must at least allege either that (1) they "will not" make another "purchase . . . although [they] would like to" or (2) they "might purchase the product in the future" despite the alleged deception); *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("Without any stated desire to purchase [a product] in the future, [plaintiffs] do not have standing to pursue injunctive relief.")). They cannot rely on previous purchases or services. *See Davidson*, 889 F.3d at 970. Plaintiffs do not allege they intend to use Subscribe & Save again or even make another purchase on Amazon.com, so they lack standing to pursue injunctive relief.

### B. Plaintiffs fail to state a claim under the Washington Consumer Protection Act (CPA) because they fail to allege any deception, unfairness, injury, or causation.

Even if Plaintiffs could establish Article III standing, the Court should still dismiss their CPA claim. Under the CPA, a plaintiff must allege that "(i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred in the conduct of trade or commerce; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury." *Rydman v. Champion Petfoods USA, Inc.*, 2023 WL 3506133, at *5 (W.D. Wash. May 17, 2023). A failure to plead just one element is fatal, but **Plaintiffs fail to allege at least three elements of their claim**: a deceptive or unfair practice; injury; and causation. *See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) ("All elements [of a CPA claim] must be present; a finding that any element is missing is fatal to the claim.").

#### 1. Plaintiffs fail to allege deception because no reasonable consumer could have believed Subscribe & Save pricing was static and Amazon did not omit any material information about pricing.

Plaintiffs attempt to allege deception by asserting that Amazon both misrepresented and omitted information about potential price changes for Subscribe & Save orders. *See* Compl. ¶ 6.12. The Complaint does not support either theory.

**<u>No alleged misrepresentation</u>**. Plaintiffs contend that "based on the product listing and [their] understanding of the Subscribe & Save Program," they believed future prices "would remain at or near the lowest price available on Amazon" regardless of seller, *id.* ¶ 4.3, and would be "consistent with anticipated future prices," *id.* ¶ 4.5. Courts evaluate misrepresentation claims under the "reasonable consumer" standard, which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citation modified); *see also Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (applying reasonable consumer standard to CPA claims). "[A] plaintiff's unreasonable assumptions" about a company's statements "will not suffice." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

No reasonable consumer could have been misled under the facts alleged here. *First*, nothing in the Complaint supports Plaintiffs' speculative beliefs about Subscribe & Save pricing. Product detail pages (with "product listings") identify the price at which a product is initially offered for Subscribe & Save orders and the applicable discount, confirm that customers can "Cancel anytime," and provide a link to the Subscribe & Save FAQ page. *See* Compl. ¶¶ 3.60–3.62, 3.69; Taneja Decl. ¶ 16; *id.* ¶ 17, Ex. 4 (Subscribe & Save FAQs). When customers select the "Confirm subscription" button, they agree to the Subscribe & Save Terms. *See id*. ¶ 3.69; Taneja Decl. ¶ 14; *id.* ¶ 15, Ex. 3. The product detail pages and Subscribe & Save Terms convey that customers signing up for a subscription will receive a discount on recurring deliveries and prices may change for future orders. In no way do these materials suggest that prices will remain static or that Amazon will ferret out the lowest-available price from any seller over the life of a subscription.[3] *See In re Estate of Storey v. Amazon*, 2025 WL 887373, at *3 (W.D. Wash. Mar. 21, 2025) ("Amazon's failure to abide by promises it did not make with respect to" a service was not deceptive under the CPA); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) (explaining that a statement is "not deceptive just because some consumers could unreasonably misunderstand").

*Second*, reasonable consumers use their real-world experience and common sense when they make purchases. *See, e.g.*, *Moore*, 4 F.4th at 882 (concluding allegations did not meet the reasonable consumer standard because consumers consider "other information available" to them); *Ebner*, 838 F.3d at 965 (affirming dismissal of consumer deception claims because "no reasonable consumer" would have held the alleged belief given the "commonplace" nature of the product packaging). They understand that prices change—particularly during inflationary periods and for commodities like coffee that are subject to changing market and weather conditions. *See, e.g.*, *Wood v. Blue Diamond Growers*, 722 F. Supp. 3d 554, 562 (D. Md. 2024) (noting that "prices of consumer goods fluctuate over time, across different states, and even across different stores."); *Fabozzi v. StubHub, Inc.*, 2012 WL 506330, at *6 (N.D. Cal. Feb. 15, 2012) (dismissing consumer

[3] Plaintiffs cite a webpage for third-party sellers on Amazon.com, which notes that Amazon may at its discretion substitute items in Subscribe & Save orders. *See* Compl. ¶ 3.73. But Plaintiffs do not allege that this webpage was ever presented to customers (rather than sellers). Nor do they plausibly allege this seller notice created an obligation to ensure customers receive static pricing or the lowest-available price for Subscribe & Save orders.

deception claims with prejudice because a "reasonable consumer would understand" that ticket prices reflect "supply and demand" and they "may pay a higher price" at times). They do not assume prices will remain the same no matter what happens in the market or how long they subscribe. *See Moore*, 4 F.4th at 882 (affirming dismissal and holding that "unreasonable assumptions" were insufficient to support a misrepresentation claim under analogous consumer-protection statutes).

*Third*, Amazon repeatedly disclosed that prices could change, including at the point of Plaintiffs' initial subscription. *See, e.g.*, *Storey*, 2025 WL 887373, at *4 (explaining that "whatever promises are made or suggested when an order is placed on the checkout page must be considered in conjunction with all of the terms and conditions that govern the order"); *Fabozzi*, 2012 WL 506330, at *6 ("Given these and other disclosures on Defendants' websites, Plaintiff's claim that reasonable consumers would be deceived and forced into paying higher prices than they otherwise would is not plausible.").[4] The Subscribe & Save Terms clearly disclose that the "total cost charged to your payment method for each Subscribe & Save order will be the cost of the item on the day that order is processed (**which is subject to change**)" and "**[s]ome of the offer details may change** as you receive deliveries over time (**for example, price**, taxes, availability, shipping charges, and seller"). Taneja Decl. ¶ 10, Ex. 2 at 2 (emphasis added); *see also* Taneja Decl. ¶ 17, Ex. 4 at 1 (Subscribe & Save FAQs) (explaining that the price of an item may fluctuate delivery to delivery, "depending on the Amazon.com price of the item at the time we process your order"). And Amazon informed Plaintiffs by email of the specific price for each of their orders, alongside the previous prices they paid. *See* Compl. ¶ 4.11. Plaintiffs cannot plausibly claim they believed prices would never change. *See, e.g.*, *Cole v. Keystone RV Co.*, 2021 WL 3111452, at *4 (W.D. Wash. July 22, 2021) (dismissing CPA claim where disclosures "on a public website . . . were easily discoverable"), *aff'd*, 2022 WL 4234958 (9th Cir. Sept. 14, 2022).

---

[4] If Plaintiffs ignored their contract with Amazon or the other disclosures, that too cannot support a claim. Customers are bound to contracts they enter, **and** reasonable consumers review available information about the products they purchase. *See, e.g.*, *Moore*, 4 F.4th at 882 (affirming dismissal of deceptive-advertising claims because "other information readily available to the consumer [] could easily resolve the alleged ambiguity"); *Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995) (affirming dismissal for failure to plausibly allege statements were deceptive in light of disclaimers).

Courts have repeatedly held that no reasonable consumer can be misled in this precise situation: where Amazon disclosed conduct that a plaintiff later casts as deceptive. *See, e.g.*, *Storey*, 2025 WL 887373, at *4 (holding that "the terms applicable to [the plaintiff's] order address the complaint that [he] experienced" (delayed delivery), and so the plaintiff failed to state a CPA claim); *Taylor v. Amazon.com, Inc.*, 2025 WL 104381, at *4 (W.D. Wash. Jan. 15, 2025) ("This type of disclosure does not conceal Amazon's [practice], but instead contemplates that very practice." (quotation modified)); *Haywood v. Amazon.com, Inc.*, 2023 WL 4585362, at *6 (W.D. Wash. July 18, 2023) (holding that a plaintiff "fail[ed] to allege an unfair or deceptive act or practice" under the CPA because the terms to which they agreed allowed Amazon to "take the[] actions" that the plaintiff asserted were deceptive); *Marquez v. Amazon.com, Inc.*, 2021 WL 6060670, at *5 (S.D. Fla. Nov. 18, 2021), *aff'd*, 69 F.4th 1262 (11th Cir. 2023) (dismissing CPA claim because the applicable terms "clearly disclosed that [Amazon] may alter [the] Prime membership benefits" underlying the plaintiff's CPA claim). Reasonable consumers do not "ignore" disclosures like Amazon's or "read language" into them that is not there. *Millam v. Energizer Brands, LLC*, 2022 WL 19001330, at *3 (C.D. Cal. Dec. 9, 2022) (dismissing claims under California consumer-protection statutes), *aff'd*, 2024 WL 2988210 (9th Cir. June 14, 2024).

In *Chaves v. Amazon.com Services*, for example, the plaintiffs alleged that Amazon violated the CPA by collecting sales tax on in-game currency and gaming subscriptions. 2022 WL 1908827, at *5 (W.D. Wash. May 23, 2022) (Tsuchida, M.J.), *report and recommendation adopted*, 2023 WL 3301994 (W.D. Wash. May 8, 2023) (Lin, J.). This Court concluded that because "Amazon disclose[d] in its Help pages that it will collect sales tax," Amazon did not "engage[] in false, misleading, or deceptive practices by . . . then accurately collecting the [] tax." *Id.* The Court therefore dismissed the CPA claim, as it should here. 2023 WL 3301994, at *3.

*Fourth*, Plaintiffs' speculation that "Featured Offers" on product detail pages somehow misrepresent Subscribe & Save pricing also fails to satisfy the reasonable consumer standard. Plaintiffs claim that through Featured Offers, Amazon highlights its own offers with artificially low prices to induce subscriptions sold by Amazon rather than third-party sellers. Compl. ¶¶ 3.41–3.47, 3.64–3.68. But they do not allege any *plausible* facts supporting the assertion that Amazon

uses Featured Offers in this manner or that Amazon does so for Subscribe & Save items. *See id.* ¶¶ 3.63, 3.66.

Judge Marsha J. Pechman recently rejected a nearly identical theory. In *Taylor v. Amazon.com, Inc.*, the plaintiffs alleged that Amazon favors its own offers through Featured Offers, even when lower-priced offers from third-party sellers are available, and that customers believe Featured Offers show the lowest-price offers. 2025 WL 104381, at *2; *see also* Compl. ¶¶ 3.41–3.47, 3.64–3.66 (alleging the same). Judge Pechman dismissed the CPA claim with prejudice, concluding that Featured Offers are not likely to mislead a reasonable consumer because Amazon does not represent the price for the Featured Offer as the "lowest priced" offer, Amazon explains the Featured Offer is determined by more than price, and Amazon discloses how sellers and offers are selected for the Featured Offer. *Taylor*, 2025 WL 104381, at *4–5. The Court should likewise reject this baseless theory.

For these same reasons, Plaintiffs fail to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See Depot*, 915 F.3d at 666 (explaining that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged" (citation modified)). They do not allege *what* was false because they identify no statement purportedly suggesting static or lowest-available prices. They do not plead *why* any statement was false because they do not allege any statement was untrue. They do not plead *how* they were deceived because Amazon disclosed—and they agreed—that prices could change. *See, e.g.*, *Nicholas v. Amazon.com, Inc.*, 2025 WL 2830693, at *5 (W.D. Wash. Oct. 6, 2025) (concluding that CPA claim "fail[ed] to satisfy FRCP Rule 9(b)'s heightened standard" because the plaintiff "fail[ed] to allege what exactly in the [Subscribe & Save] cancellation process is confusing or misleading").

**No alleged omission**. Plaintiffs also assert that Amazon "omits material information about the market price" of Subscribe & Save items, including that prices could change. Compl. ¶ 6.12; *see also id.* ¶ 4.19 (alleging "omission of material information regarding the prices of the [coffee Plaintiffs purchased]"). To state an omission theory, Plaintiffs must plausibly allege that Amazon did not disclose "a fact" Amazon "was obliged to disclose" or information that was "contrary to a

representation actually made by" Amazon. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (internal citations omitted). And for an alleged omission to be material, it must be "likely to affect the consumer's conduct or decision with regard to a product or service." *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 10 (Wash. Ct. App. 2019) (citation modified), *aff'd*, 472 P.3d 990.

Plaintiffs' omission theory is untenable because Amazon **discloses** the very pricing information they contend was omitted. *First*, Amazon explains in multiple places that for the Subscribe & Save program generally, item prices can change any time for any reason—**a disclosure that Plaintiffs acknowledge**. *See* Compl. ¶¶ 3.64, 3.77. *Second*, Amazon notifies customers of the specific price before each recurring Subscribe & Save delivery—**as Amazon did for Plaintiffs**. *See, e.g.*, *id.* ¶ 3.77. *Third*, Amazon provides pricing information via product detail pages, including the number of offers available and the starting price and the sellers for those offers. *See, e.g.*, *id.* ¶ 3.64 (identifying "19 options from $14.96"). Customers can use this information to comparison shop and purchase their preferred offer (if any)—**as Plaintiffs admittedly did**. *See id.* ¶ 4.17 (alleging Plaintiffs purchased the same coffee from a different seller); *see also Taylor*, 2025 WL 104381, at *5 ("Just like in a brick-and-mortar store, Amazon customers may peruse the digital 'shelves' and compare deals and items to find those which best fit their needs.").

Nor can Plaintiffs contend that Amazon should have provided different information in a different format. Amazon has no obligation to provide information in a plaintiff's preferred format; the Subscribe & Save Terms, product detail pages, the Manage Your Deliveries page, **and** the pre-order emails with prices for recurring shipments all disclosed the information that Plaintiffs baselessly assert was omitted. *See* Taneja Decl. ¶10, Ex. 2 (Subscribe & Save Terms); *id.* ¶ 17, Ex. 4 (Subscribe & Save FAQs). Nor did Amazon have a duty to identify that other sellers could, at some point, offer the same item at a lower price or identify such items on a continuous basis and tell customers about them. Compl. ¶ 6.9; *see also Cole*, 2021 WL 3111452, at *4 ("Sellers have a duty to disclose only facts not easily discoverable by the buyer."). Offer and seller information were readily available, allowing Plaintiffs to "compare deals." *See Taylor*, 2025 WL 104381, at

*5 (dismissing CPA claim in part because available information allowed customers to "compare deals"); *see also Cole*, 2021 WL 3111452, at *5 (dismissing CPA claim where information was posted on a public website).

The purported omission was also not "material": because Amazon disclosed the allegedly omitted information, Plaintiffs cannot plausibly allege they would have made a different decision if they knew Subscribe & Save prices could change. *See Brown v. Brita Prods. Co.*, 172 F.4th 1113, 1119 (9th Cir. 2026) (holding that "[b]ecause a reasonable consumer has been made aware of the Products' limitations" via disclosures about the product, "we cannot say that a reasonable consumer would have been misled by Brita's omission of these limitations on its Products' packaging"). They *had* this information and *still* subscribed. *See Taylor*, 2025 WL 104381, at *6 (dismissing CPA claim where the plaintiffs had "a free and informed choice to review the offers for a particular product" and the "means to avoid the harm by selecting a different offer or not purchase the product at all"). Because Plaintiffs were aware of potential price changes, they cannot show this same information could have somehow changed their "decision with regard to a product or service." *See Young*, 442 P.3d at 10; *see also Brown*, 172 F.4th at 1119 (holding that the "disclosure" of purportedly omitted information "would not be important to a reasonable consumer in light of Brita's other disclosures on its . . . packaging").

**2. Plaintiffs do not allege that the fully disclosed prices they paid were somehow unfair.**

Plaintiffs also contend that Amazon acted unfairly by not "secur[ing] the best available prices" for them "consistent with the initial subscription price and fail[ing] to sufficiently inform consumers to monitor prices." Compl. ¶ 6.15. To state an unfairness claim, a plaintiff must plausibly allege that "(1) the act or practice causes or is likely to cause substantial injury to consumers; (2) which is not reasonably avoidable by consumers themselves; and (3) not outweighed by countervailing benefits to consumers or to competition." *Taylor*, 2025 WL 104381, at *5.[5]

[5] In addition to the substantial injury framework, a plaintiff may allege unfairness under the CPA by alleging that a practice is "immoral, unethical, oppressive, or unscrupulous." *See id.* at *5 (citation modified). Plaintiffs' complaint "contains no allegations," however, that Subscribe & Save "offends public policy or is somehow immoral, unethical,

Plaintiffs' unfairness theory fails for a threshold reason: they merely repackage the allegedly deceptive practice as unfair. *Compare* Compl. ¶¶ 6.7–6.9, 6.12 (alleging deception), *with id.* ¶ 6.15 (alleging unfairness). Courts routinely dismiss "unfairness" theories when "the factual basis . . . is the same as for [the] plaintiffs' other" deficient "claims." *Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782, 790 (S.D. Cal. 2021), *aff'd*, 2023 WL 1097258 (9th Cir. Jan. 30, 2023); *see also, e.g.*, *Smith v. Intel Corp.*, 745 F. Supp. 3d 853, 868 (N.D. Cal. 2024) (dismissing California consumer-protection claim alleging unfairness because there was "little to no daylight between [the unfairness] allegations and the allegations supporting Plaintiffs' fraud claims").

The claim fails on the merits, too. Plaintiffs cannot show any "substantial injury" because they do not allege "where or when Amazon promises or suggests" customers will receive the lowest available prices for Subscribe & Save items or that Amazon will expressly inform them to monitor prices. *King v. Amazon.com Servs. LLC*, 2026 WL 628261, at *4–5 (W.D. Wash. Mar. 6, 2026) (dismissing unfairness claim under the CPA where the allegation was unsupported and "even less plausible when viewed in conjunction with [Amazon's] disclosures"). This "failure" is "fatal to their CPA unfairness claim." *Id.* Moreover, because Amazon "fully disclosed" potential price increases, Plaintiffs cannot assert—"as a matter of law"—that such increases were unfair. *Haywood*, 2023 WL 4585362, at *7 (holding that "exercising a right that a contract permits and is fully disclosed to the parties in advance is not an unfair or deceptive act or practice" and dismissing CPA claim).

Regardless, any supposed injury was "reasonably avoidable." *Taylor*, 2025 WL 104381, at *5. Plaintiffs could have avoided future price increases by declining to subscribe or later canceling or modifying their subscription. *See Gray*, 653 F. Supp. 3d at 859 ("In light of Amazon's disclosures, consumers would have 'reason to anticipate' their injury and 'the means to avoid it'—*i.e.*, by reviewing the Alexa Terms and declining to purchase and use an Alexa-enabled device."); *Beagle v. Amazon.com, Inc.*, 2024 WL 4028290, at *4 (W.D. Wash. Sept. 3, 2024) (holding that

oppressive, or unscrupulous," and so the Court need not analyze those factors. *See id.*; *see also* Compl. ¶ 6.15 (alleging that "Defendant's conduct was unfair in that it is likely to cause substantial injury to Plaintiffs and the Class that is not reasonably avoidable by consumers and not outweighed by countervailing benefits to consumers or to competition").

plaintiffs could have avoided the allegedly unfair practice by "read[ing] the terms and conditions and choos[ing] not to use [the] services"). Indeed, Plaintiffs' acknowledgment that they bought the same coffee from another seller for less defeats any claim that the alleged overpayment was unavoidable. *See* Compl. ¶ 4.17. They were able to comparison shop and select a different offer but chose to proceed.

Plaintiffs attempt to bolster this claim by pointing to other alleged pricing practices and supposed "inertia" that consumers may experience when they use subscription services. *See id.* ¶ 3.49. But Plaintiffs do not allege any connection between these other asserted practices and the Subscribe & Save program. *See, e.g.*, *id.* ¶¶ 3.11–3.47; *cf. Nicholas*, 2025 WL 2830693, at *5 (dismissing CPA claim because the complaint "fail[ed] to provide anything beyond general allegations" about cancellations for the Subscribe & Save program); *Barnett v. E:Space Labs LLC*, 2018 WL 3364660, at *5 (D. Or. July 10, 2018) (disregarding "extraneous facts and allegations" in deciding motion to dismiss). Nor do the materials Plaintiffs cite suggest any obligation to protect consumers from "inertia." *See* Compl. ¶¶ 3.52 (Consumer Financial Protection Bureau "circular"), 3.54 (Federal Trade Commission "policy statement"). These materials are not authoritative guidance, and they refer to concerns that are not present here: add-on products, fees for unwanted subscriptions, and trial plans. *See id.* ¶¶ 3.52, 3.54; *see also Syed v. M-I, LLC*, 853 F.3d 492, 504 n.6 (9th Cir. 2017) (explaining that "informal opinion letters [of FTC staff attorneys] do not constitute authoritative guidance"); *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) (same for an agency "guidance document"). In any event, customers can cancel their subscriptions any time, Amazon explains prices can increase, and no fees are charged for the Subscribe & Save program—all of which facilitate consumer choice and action. *See, e.g.*, Compl. ¶¶ 3.69 (reproducing subscription screen confirming "No fees" and that users can "Skip or cancel anytime"), 3.74 (acknowledging that Amazon explains it "can 'change the price for a Subscribe & Save subscription at any time for any reason'").

And consumers benefit from subscription services that provide recurring deliveries of discounted items and allow them to avoid the hassle of repeat ordering. *See King*, 2026 WL 628261, at *4 (explaining that courts consider consumer benefits in evaluating unfairness claims

under the CPA). Even the policy statement Plaintiffs cite acknowledges that. *See* Compl. ¶ 3.54 (citing FTC statement that acknowledges certain subscription services "are widespread in the marketplace and can provide substantial benefits for sellers and consumers"). There is also a strong interest in allowing businesses to set prices based on market conditions, especially when a business clearly discloses the prices, explains that prices may vary for future orders, and affirmatively informs customers of the prices for each of their orders. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1171 (C.D. Cal. 2014) ("[P]rice setting is ordinarily left to the business judgment of merchants.").

**3. Plaintiffs cannot allege an injury because they received the coffee they ordered at the disclosed price.**

Plaintiffs assert that purported misrepresentations "about the market price of" Subscribe & Save "products" caused them to make "purchases they otherwise would not have made, pay more for their purchases, and deprived them of their expectancy in receiving 'Savings' as advertised." Compl. ¶ 6.12. Recent Washington Supreme Court authority unequivocally forecloses these theories of injury under the CPA. *See Montes*, 586 P.3d at 1002.

In *Montes v. SPARC Group LLC*, the Washington Supreme Court held that "[a] consumer does not suffer an injury" under the CPA if she "received and retained the [product] she wanted at the price she agreed to pay." *Id.* That is true even when a plaintiff alleges a "false discounting scheme" induced them to make a purchase *and* they thought they were receiving a better deal than they did. *Id.* at 1003. The court reached this conclusion because "a false and deceptive advertising scheme . . . that has no impact on the economic value of the fungible consumer good" does not cause "injury." *Id.* at 1007 (citation modified). Even though a "plaintiff may have been manipulated into purchasing [] items because she believed she was getting a bargain," she does not "suffer[] economic harm" from an item worth what she paid. *Id.* at 1008 (citation modified and quotations omitted).

That is all Plaintiffs allege here: that they received coffee at the price they agreed to pay. Washington law is clear that there is no "economic harm"—and no CPA injury—from such a purchase. *Id.* at 1002; *see also Taylor v. Amazon.com, Inc.*, 2024 WL 3326430, at *4 (W.D. Wash.

July 8, 2024) ("Plaintiffs make no such allegation that they suffered an actual, specific injury, which is fatal to their CPA claim."). Plaintiffs' unsupported conjecture that Amazon sets artificially low initial prices but increases them later does not change the result. *See* Compl. ¶¶ 3.49, 3.67. Even if that were true (and it is not), Plaintiffs do not allege the supposed practice had any "impact on the economic value" of the coffee. *Id.* ¶ 4.19. Regardless of why they bought the coffee or the deal they hoped to get, they paid the disclosed price. *See id.* ¶¶ 4.4–4.16. Their "dashed expectations" about a perceived bargain is not an injury. *See Montes*, 586 P.3d at 1002; *see also Demopolis v. Galvin*, 786 P.2d 804, 809 (Wash. Ct. App. 1990) (affirming dismissal where "alleged injury [was] insufficient to satisfy the injury element of a private CPA claim").[6]

**4. Amazon's contract terms and disclosures foreclose Plaintiffs' purported reliance on static or lowest-available pricing.**

Plaintiffs' claim also fails because they do not allege they relied on any specific statement about Subscribe & Save pricing. A plaintiff must allege that "but for the defendant's unfair or deceptive act or practice the plaintiff's injury would not have occurred." *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 996 (Wash. 2020) (citation modified). Where a plaintiff's theory of causation is that they relied on an alleged misrepresentation, as here, they must plead facts showing such reliance. *See id.* (requiring reliance where that is the plaintiff's "own causation theory"). The reasonable consumer standard also applies: "[I]f reasonable consumers would not rely on the purported misrepresentation," a plaintiff fails to allege this element. *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008).

Plaintiffs contend they "saw, read, and reasonably relied on [Amazon's] Subscribe & Save Program prices and advertisements when purchasing Subscribe & Save items," Compl. ¶ 6.14, and subscribed because Amazon "appeared to offer a discounted price that was and would remain at or near the lowest price," *id.* ¶ 4.3. But Plaintiffs do not identify what specifically they read or

[6] Nor should the Court credit Plaintiffs' conclusory assertion that they "expended time and resources investigating" the allegedly "unfair and deceptive representations." Compl. ¶ 6.18.4. Even if that could be an injury, Plaintiffs do not allege how they "expended time," what "resources" they expended, what they supposedly investigated, or how an investigation affected their money or property. Plaintiffs' allegations are thus insufficient to show their "money" was "diminished," let alone "because of [any] unlawful conduct." *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990); *see also King*, 2026 WL 628261, at *6 (explaining that damages for "inconvenience are not recoverable under the CPA"); *Montes*, 586 P.3d at 1003, 1005 (noting that the plaintiff alleged a "yearslong investigation by plaintiff's counsel" but concluding the plaintiff did not allege a CPA injury because she did not allege an "economic loss").

reviewed before their purchase. *See Gray*, 653 F. Supp. 3d at 859 (concluding the plaintiffs failed to allege causation where the "Complaint contains no allegations that Plaintiffs viewed or heard any of those statements or were otherwise aware of them at the time they purchased their [] devices"); *King*, 2026 WL 628261, at *7 (same where "[t]he Complaint provides examples of Amazon's Two-Day Delivery advertisements without connecting them to Plaintiffs"). That alone is fatal to causation.

Plaintiffs' purported reliance is also unreasonable. Nothing Plaintiffs cite suggests static pricing, lowest-available pricing, or continuous monitoring of prices offered by other sellers. *See* Compl. ¶¶ 3.60–3.62 (alleging that the product detail page "shows the consumer two prices": a "One-Time Purchase" price and the Subscribe & Save price). The product detail page displayed the then-current Subscribe & Save price with the applicable discount and provided a link at which Plaintiffs could review additional information about Subscribe & Save orders—including that prices can change. *See id.* ¶ 3.64; Taneja Decl. ¶ 17, Ex. 4 (Subscribe & Save FAQs); *id.* ¶ 10, Ex. 2 (Subscribe & Save Terms). There is simply no representation that could have led Plaintiffs to believe they were subscribing to static or lowest-available pricing. *See In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *7 (W.D. Wash. July 18, 2024) (dismissing CPA claim because the plaintiffs' own allegations confirmed they "could not have relied on [the allegedly deceptive] ad"). And Amazon's "unequivocal disclaimers decisively refute [Plaintiffs'] allegations of reasonable reliance." *Dix v. Nova Benefit Plans, LLC*, 2015 WL 12859221, at *9 (C.D. Cal. Apr. 28, 2015) (citation modified).

### C. Dismissal should be without leave to amend because Plaintiffs cannot cure the fundamental deficiencies in their CPA theories.

Dismissal should be without leave to amend because Plaintiffs cannot cure the Complaint's defects. *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Amazon's contractual terms and disclosures bar Plaintiffs' theory of liability and their CPA claim. Nothing they might attempt to allege could change that. *See Moore*, 4 F.4th at 882 (affirming dismissal "as a matter of law" where "other available information … would quickly dissuade a reasonable consumer from [their erroneous] belief"). Accordingly, "amendment would be futile." *Haywood*, 2023 WL 4585362, at

*11 (dismissing without leave to amend because the court concluded that "Amazon's exercise of a right permitted by the contract and disclosed to Plaintiff is not [] unfair or deceptive").

## V. CONCLUSION

For these reasons, Amazon respectfully requests that the Complaint be dismissed without leave to amend and with prejudice.

Dated: August 14, 2026

I certify that this memorandum contains 8,379 words, in compliance with the Local Civil Rules.

*s/ Mallory A. Gitt*

Mallory A. Gitt, WSBA No. 50025
MGitt@mofo.com
Kyle D. Cole, WSBA No. 58111
KCole@mofo.com
Morrison & Foerster LLP
925 Fourth Avenue, Floor 38
Seattle, WA 98104-1157
Telephone: (206) 327-6500
Facsimile: (206) 260-8813

*Attorneys for Amazon.com, Inc.*