THE HONORABLE BRIAN A. TSUCHIDA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AARON HERMAN and LEAH HERMAN, a married couple, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 2:26-cv-01674-BAT<br><br>**REPLY IN SUPPORT OF AMAZON'S MOTION TO DISMISS COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: OCTOBER 2, 2026<br><br>ORAL ARGUMENT REQUESTED |



MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FL 36
SEATTLE, WA 98104-1157

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

- A. Plaintiffs confirm no injury under Article III or the CPA. ..... 2
- B. Amazon disclosed that prices could change before Plaintiffs subscribed. ..... 4
- C. Plaintiffs' new "savings" theory is not in the Complaint, and both their old and new theories of deception fail regardless. ..... 6
- D. Plaintiffs do not dispute—and therefore concede—that they fail to state an unfair practice. ..... 9
- E. Plaintiffs do not plausibly allege reliance on any specific statement about Subscribe & Save pricing ..... 10
- F. Plaintiffs do not explain how they could amend to allege a plausible CPA claim. ..... 11

III. CONCLUSION ..... 11




MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FL 36
SEATTLE, WA 98104-1157

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amazon Serv. Fee Litig.*,
2024 WL 3460939 (W.D. Wash. July 18, 2024) ....................5, 11

*Dhoat v. Walia*,
2024 WL 4804980 (N.D. Cal. Nov. 15, 2024) ....................2

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023)....................10

*Haywood v. Amazon.com, Inc.*,
2023 WL 4585362 (W.D. Wash. July 18, 2023) ....................11

*King v. Amazon.com Servs. LLC*,
2026 WL 628261 (W.D. Wash. Mar. 6, 2026) ....................10

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ....................2, 3

*Montes v. SPARC Grp., LLC*,
586 P.3d 999 (Wash. 2026)....................3, 4

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ....................11

*Morehouse v. Apple, Inc.*,
2026 WL 2111332 (N.D. Cal. July 22, 2026), *app. docketed*, No. 26-5476 (9th Cir. Aug. 25, 2026) ....................4

*Naimi v. Starbucks Corp.*,
798 F. App'x 67 (9th Cir. 2019) ....................2

*Nicholas v. Amazon.com, Inc.*,
2025 WL 2830693 (W.D. Wash. Oct. 6, 2025) ....................5

*Takano v. Nelson*,
2020 WL 3403056 (W.D. Wash. June 19, 2020)....................10

*Taylor v. Amazon.com, Inc.*,
2025 WL 104381 (W.D. Wash. Jan. 15, 2025)....................8, 9

*Voss-Curry v. Crown Equip. Corp.*,
2022 WL 4368047 (W.D. Wash. Sept. 21, 2022)....................6

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) ....................7, 9

*Young v. Toyota Motor Sales, U.S.A.*,
472 P.3d 990 (Wash. 2020)....................10

**Rules**

Local Civil Rules W.D. Wash. LCR 7(b)(2) ....................7

# I. INTRODUCTION

Plaintiffs' opposition confirms their failure to plausibly allege Article III standing or state their single claim under the Washington Consumer Protection Act. Plaintiffs received the coffee they ordered through Subscribe & Save, at the very prices that Amazon disclosed to them, and only after agreeing that prices could change any time. Unable to square these facts with their burden to establish standing or plead a viable CPA claim, Plaintiffs abandon their original theory of deception, fail to address Amazon's arguments, and resort to speculation. These tactics all fail, and the Court should dismiss for lack of subject matter jurisdiction or failure to state a claim.

**No injury.** Plaintiffs claim they overpaid for the coffee when the price increased for later orders. But they do not allege any facts supporting overpayment, which is fatal to this theory of injury under both Article III and the CPA. They assert they did not receive the expected "savings" and that Amazon set an artificially low price for their initial order. But receiving a lesser bargain is not an injury. Nor is buying an as-expected product at a disclosed price—even if a supposed misrepresentation induced the purchase.

**No deception.** Plaintiffs cast Amazon's disclosures about Subscribe & Save pricing as "fine print" on "a separate web page," but that is not true: Amazon conspicuously told Plaintiffs *at the point of subscription* that "**prices may change from order-to-order**." And given that notice, no reasonable consumer could have expected pricing "reasonably consistent" with initial prices or "at or near the lowest price available," as Plaintiffs allege they did. Indeed, Plaintiffs concede as much by now arguing that they expected to "save money." Asserting a new theory in opposition is improper, but it fails regardless. Plaintiffs received the advertised savings.

**No unfairness.** Amazon's motion showed that fully disclosed pricing practices cannot be "unfair" as a matter of law and that any supposed injury was reasonably avoidable because Plaintiffs could have canceled or modified their subscription at any time. Plaintiffs do not address these arguments.

**No reliance.** Plaintiffs concede that they do not allege any connection between their purchasing decision and any specific representation by Amazon. They refer generally to "Subscribe & Save Program prices and advertisements" but never identify what statement they

actually read, what it supposedly promised, how it may have influenced their decision to subscribe, or why it was reasonable to conclude—despite Amazon's disclosures—that prices would remain consistent or be the lowest available.

Because Plaintiffs cannot cure these defects, the Court should dismiss with prejudice.

## II. ARGUMENT

### A. Plaintiffs confirm no injury under Article III or the CPA.

Plaintiffs fail to identify a single fact supporting their theory that they overpaid. Instead, they merely assert that they "paid more than they would have or should have." Opposition to Motion to Dismiss ("Opp."), Dkt. No. 26 (Sept. 11, 2026) at 23; *see also* Complaint ("Compl."), Dkt. No. 1 (May 15, 2026) ¶ 4.19. They do not allege the coffee was worth objectively less than they paid. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706–07 (9th Cir. 2020). They do not allege the coffee had a defect. *See id.* at 706–07. They do not allege they received a different product than they expected. *See Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019). And they do not allege they paid any additional fee by ordering through Subscribe & Save (and there is no such fee). *See* Compl. ¶ 3.69; Motion to Dismiss ("Mot."), Dkt. No. 23 (Aug. 14, 2026) at 2. Case law throughout the Ninth Circuit and Washington confirms that simply asserting a plaintiff overpaid—without any factual support—does not sufficiently establish an injury under Article III or the CPA. *See* Mot. at 7 (collecting cases).[1] Nor is there an injury when a purchase is made on fully disclosed terms. *See id.* at 7–8 (citing Compl. ¶ 6.18.1).

Plaintiffs' attempts to overcome this fundamental deficiency all fail. Their only response to the Article III standing deficiency is buried in a footnote asserting "actual harm." Opp. at 24 n.14. This conclusory argument is unsupported by any factual allegations and insufficient to rebut Amazon's arguments. *See Dhoat v. Walia*, 2024 WL 4804980, at *7 (N.D. Cal. Nov. 15, 2024) (rejecting "one-sentence footnote" in "opposition" that "summarily conclud[ed] the elements have been met"). Plaintiffs otherwise attempt to downplay Amazon's authorities as "irrelevant because Plaintiffs do not allege that the product they received was defective or inferior." Opp. at 18–19.

---

[1] Plaintiffs concede they have not established Article III standing to pursue injunctive relief and therefore "withdraw" that request. Opp. at 2 n.2.

But they have it backward: Amazon cited those cases not because a defect is required but because they illustrate the kind of concrete facts—such as a product defect, a product worth less than what was paid, or a product that was different from what was expected—that can support a plausible overpayment theory. Plaintiffs have asserted *no such facts*.

Plaintiffs also argue that they overpaid because they did not receive "savings" they expected by signing up for Subscribe & Save. *See id.* at 15, 19. But a lesser bargain than expected is not itself an injury under Article III; a plaintiff "must do more than allege that she did not receive the benefit she *thought* she was obtaining." *McGee*, 982 F.3d at 706 (emphasis in original and citation modified). The same is true under the CPA: "dashed expectations" about a perceived bargain are "not a cognizable CPA injury" where the consumer "received and retained the [product] she wanted at the price she agreed to pay." *Montes v. SPARC Grp., LLC*, 586 P.3d 999, 1002 (Wash. 2026).

Plaintiffs' assertion that "price manipulation" induced their purchase fares no better. Opp. at 24. Even if Plaintiffs had plausibly alleged "manipulation" (they do not), false or deceptive statements about a product's "discounted price" do not cause an injury when the plaintiff receives a product at the disclosed price—as Plaintiffs indisputably did. *Montes*, 586 P.3d at 1002–03 (explaining that "the fact that plaintiff may have been manipulated into purchasing the items because she believed she was getting a bargain does not necessarily mean she suffered economic harm" (citation modified)); *see also* Mot. at 19–20; Compl. ¶¶ 3.49, 3.67, 4.9.

*Nemykina v. Old Navy, LLC*, does not support a different outcome. *See* Opp. at 22–23 (citing 461 F. Supp. 3d 1054 (W.D. Wash. 2020)). There, the court held that "[i]nducing a plaintiff into spending money she otherwise would not have spent, based on a misrepresentation" is "a cognizable injury." 461 F. Supp. 3d at 1061. But the Washington Supreme Court has since rejected that reasoning. In *Montes*, the court held that a consumer who purchases a product based on a "false discounting scheme" does not suffer injury under the CPA where she received the product she wanted at the price she agreed to pay. 586 P.3d at 1002–03. That's precisely what Plaintiffs allege here—a purportedly deceptive pricing scheme that induced their purchase—and *Montes* forecloses their reliance on *Nemykina.*

*Nemykina* is also distinguishable. The plaintiff there alleged that "the clothing items she purchased were not in fact worth the list prices." 461 F. Supp. 3d at 1061 (citation modified). Plaintiffs do not allege anything similar; they allege only that the coffee they bought was available on a single day *as a one-time purchase* from a different seller for a lower price. Compl. ¶¶ 4.17–4.18. This single comparison does not show that the coffee Plaintiffs ordered for recurring delivery was worth less than they paid. *See Morehouse v. Apple, Inc.*, 2026 WL 2111332, at *2 (N.D. Cal. July 22, 2026), *app. docketed*, No. 26-5476 (9th Cir. Aug. 25, 2026) (holding that "a single product comparison to a single other retailer" was insufficient to allege an overpayment injury under Article III); *Montes*, 586 P.3d at 1003–04 (concluding that the plaintiff had not alleged injury under the CPA because she did not allege the product was worth less than she paid, even though she asserted that the product's six-month price history showed its value was inflated). At most, it shows a competitive marketplace with different sellers offering different prices on occasion.

**B. Amazon disclosed that prices could change before Plaintiffs subscribed.**

Plaintiffs ignore the actual Subscribe & Save signup process. *See* Mot. at 2–3.[2] They dismiss Amazon's disclosures as "fine print . . . on a separate web page," Opp. at 16, but mischaracterize where and how Amazon disclosed potential price changes. On the sign-up screen for a Subscribe & Save order, Amazon *specifically discloses* that "**the price of your subscription may change from order-to-order.**" Declaration of Veenu Taneja ("Taneja Decl."), Dkt. No. 24 (Aug. 14, 2026) ¶ 15, Ex. 3 at 1 (emphasis in original); *see also* Mot. at 3. Customers could not confirm their subscription without seeing this disclosure. The Subscribe & Save Terms & Conditions, which are hyperlinked on the same sign-up screen, further explain that Amazon "**may change the price for a Subscribe & Save subscription at any time for any reason.**" Taneja Decl. ¶ 10, Ex. 2 at 2 (emphasis added); Mot. at 4.

[2] The Court should consider the materials Amazon submitted with its Motion under the incorporation by reference doctrine or through judicial notice. *See* Dkt. No. 25. Plaintiffs do not oppose consideration of these materials.




Taneja Decl. ¶ 15, Ex. 3 at 1.

Plaintiffs' assertion that Amazon's disclosures "violate federal standards" is baseless. Opp. at 7 (capitalization omitted). Plaintiffs do not provide any authority establishing that these "standards" apply to the Subscribe & Save sign-up process or their state-law CPA claim. But even if they did, Amazon meets them. Amazon did not "misrepresent or fail to clearly and conspicuously disclose the material terms of an offer." *Id.* Amazon disclosed the price for Plaintiffs' initial order, explained that prices could change order to order, and told Plaintiffs they could cancel any time. *See* Taneja Decl. ¶ 15, Ex. 3 at 1; *In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *8 (W.D. Wash. July 18, 2024) (dismissing CPA claim where the allegedly undisclosed fee was identified on the "final order page" and rejecting argument that the disclosure was in "small" and "opaque text"); *cf. Nicholas v. Amazon.com, Inc.*, 2025 WL 2830693, at *5 (W.D. Wash. Oct. 6, 2025) (rejecting claims that the Subscribe & Save process was deceptive because of purported "dark


MORRISON & FOERSTER LLP
925 FOURTH AVENUE, FL 36
SEATTLE, WA 98104-1157

patterns"). These disclosures were unavoidable: Plaintiffs could not confirm the subscription without selecting a button right above them. Taneja Decl. ¶¶ 11, 14. Multiple courts—including this one—have rejected claims of consumer deception where Amazon acted consistently with disclosures presented in a similar manner. *See* Mot. at 13–14 (citing, for example, *Chaves v. Amazon.com Servs.*, 2022 WL 1908827, at *5 (W.D. Wash. May 23, 2022) (Tsuchida, M.J.)).

Plaintiffs' remaining authority is distinguishable. In *State v. LA Investments, LLC*, a disclaimer did not "cure" a mailer's "capacity for deception" because "boxed and bolded" text "overshadowed" the disclaimer. 410 P.3d 1183, 1195 (Wash. Ct. App. 2018). Amazon's disclosures were not overshadowed by other statements, and other information provided during sign-up and on product detail pages was not misleading. *See* Taneja Decl. ¶ 15, Ex. 3 at 1. And *FTC v. Amazon.com, Inc.* involved allegations of "instant enrollment" in a different subscription program "without a confirmation page," the transition of free trials to paid subscriptions, and "a multi-layered cancellation process." 735 F. Supp. 3d 1297, 1308 (W.D. Wash. 2024). The Complaint contains no such allegations: no instant enrollment; no separate subscription fee or free trial; no sign-up page without express confirmation of the order; and no layered cancellation process. *See* Mot. at 2 (explaining process).

### C. Plaintiffs' new "savings" theory is not in the Complaint, and both their old and new theories of deception fail regardless.

Confronted with Amazon's disclosures, Plaintiffs abandon the deception theory they actually pleaded and pivot to a new one. They insist they "did not expect static prices" for Subscribe & Save orders and now claim that Amazon represented they would "save money" that they supposedly did not. Opp. at 1; *see also id.* at 19 (asserting that "Amazon made misrepresentations that they would save by subscribing."). This "save money" theory appears nowhere in the Complaint. Rather, Plaintiffs allege they expected (a) the initial price they paid when signing up would be "reasonably consistent with anticipated future prices" and (b) Amazon would "secure a price at or near the lowest price available on" Amazon.com for future orders. Compl. ¶¶ 4.5–4.6, 6.8–6.9. They did not plead a general expectation of "savings," and the Court should reject their improper new theory. *See Voss-Curry v. Crown Equip. Corp.*, 2022 WL

4368047, at *2 (W.D. Wash. Sept. 21, 2022) ("Plaintiff may not defeat a motion to dismiss by supplementing the complaint through his opposition brief.").

Both theories also fail on the merits. Plaintiffs' allegations about static and lowest-available pricing fail because no reasonable consumer could have believed Amazon promised such pricing. *See* Mot. at 10–12. Nothing on product detail pages suggests that Subscribe & Save pricing is static or guarantees that customers will pay the lowest-available price from any seller for future orders for as long as they subscribe. *See id.* at 10–12. These pages identify the price at which a product is initially offered for a Subscribe & Save order and the applicable discount, confirm that customers can "[c]ancel anytime," and show how many other offers are available for the product and the starting price and sellers for those offers. *See* Compl. ¶¶ 3.60–3.64; Mot. at 11. And of course, Plaintiffs agreed that prices can change.[3] *See* Section II.B above; Mot. at 3–4, 12. Plaintiffs do not respond to these points—an admission that they have merit. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (explaining that a plaintiff who "fails to raise the issue in response to a defendant's motion to dismiss . . . has effectively abandoned his claim"); Local Civil Rules W.D. Wash. LCR 7(b)(2) (failing to oppose "may be considered by the court as an admission that the motion has merit"). They also do not dispute that Rule 9(b) applies, and their failure to meet that heightened pleading standard is another independent reason to dismiss. *See* Mot. at 14.

Plaintiffs' new "savings" theory fails too. They contend that consumers "expect to save money" on Subscribe & Save orders because "Amazon markets . . . a percentage discount over the One-Time Purchase price, which suggests actual savings" and "pre-fulfillment emails continue to report percentage discounts … even though consumers could get a better price through individual orders." Opp. at 15. But customers *do* receive savings on their recurring orders—the advertised

[3] Plaintiffs acknowledge they received email reminders about their upcoming Subscribe & Save orders, including notification of "Price changes" for their October 2024 order. *See* Compl. ¶ 4.11. They contend they had "less than 24 hours to review" that price change because the pre-order email arrived the evening the order processed. *See* Opp. at 23. But even accepting that timeframe, Plaintiffs could have reviewed their upcoming order earlier on the Manage Your Deliveries page, and they allege that prices had increased on earlier orders—both of which undercut any claim of surprise. Moreover, Amazon never promised lowest available prices or prices consistent with earlier orders, and it informed Plaintiffs multiple times before the October 2024 order—to which they agreed—that prices could change.

percentage discount on the specific offer to which they subscribed. *See* Mot. at 9. For Plaintiffs, Amazon applied the 15% disclosed discount to each of their orders, and the "pre-fulfillment emails" they received correctly identified the discount. *See* Compl. ¶¶ 4.11–4.13. There was no "false impression" about what they were saving on their orders. *See* Opp. at 9.

If a customer may at some point "get a better price through individual orders," that does not mean they are misled about savings on the Subscribe & Save offer they have selected. Opp. at 15. Product detail pages confirm that Subscribe & Save discounts apply to the selected offer—*not* to offers that *other* sellers may make available at some point in the future. *See* Mot. at 10–12. "Pre-fulfillment" emails do the same. They "reference specific Subscribe & Save discounts . . . applicable to the updated price" for that subscription—*not* discounts applicable to a *different* offer. *See* Opp. at 9.[4] Amazon also discloses the specific price for each order and whether it reflects an increase or a decrease from the prior order price, and customers can skip, cancel, or modify any time—all of which enable customers to "peruse the digital 'shelves' and compare deals." *Taylor v. Amazon.com, Inc.*, 2025 WL 104381, at *5 (W.D. Wash. Jan. 15, 2025); *see also* Mot. at 10–12. Plaintiffs do not identify any obligation requiring Amazon to continuously survey product availability and prices, identify the lowest-available price from any seller, and then inform customers about such availability and prices so they can "get a better price." *See* Opp. at 15; *see also* Mot. at 15–16.

Nor do Plaintiffs' speculative Featured Offers allegations support any theory of supposed deception—old or new. *See* Opp. at 4, 15. Plaintiffs do not allege any facts showing that Amazon favors its own offers through Featured Offers or even that Featured Offers are always the lowest-price offers. Instead, they cite Amazon's price for a *single* product—which Plaintiffs *did not even buy*—that was allegedly "substantially lower than" third-party sellers offered. *Id.* at 4–5. A lower-priced "Featured Offer" for one product does not justify inferring a Subscribe & Save-

[4] The email language that Plaintiffs identify in a footnote but did not plead in their Complaint would not change the result. *See* Opp. at 9 n.3. Plaintiffs contend that a pre-order email they received said, "Prices go up or down over time, but you'll always get your Subscribe & Save savings on top of [the] current price," and assert that this language "expressly reinforces" an expectation of savings "over current Amazon *prices*." *Id.* (emphasis added). The quoted language does not support the sweeping—and self-serving—interpretation that Amazon suggests savings on top of the then-lowest-price offer for the same item regardless of seller or whether a different offer for the item is eligible for Subscribe & Save.

wide practice of artificially undercutting other sellers to deliberately raise prices for later orders. It does not justify concluding that the initial price for the coffee Plaintiffs did buy was "artificially low" or "unsustainable." *Id.* at 15. And it does not justify concluding that reasonable consumers expect the price for every later order will be at or below that price.[5]

Plaintiffs try unconvincingly to distinguish *Taylor v. Amazon.com*, which recently rejected a similar CPA claim based on Featured Offers. *See* Opp. at 21–22. They theorize that Featured Offers promote artificially low prices for Amazon's offers, causing customers to overpay when third-party sellers allegedly offer the same items for less. *See* Compl. ¶¶ 3.41–3.47, 3.64–3.68, 4.19. That's what the *Taylor* plaintiffs alleged: that Featured Offers promoted Amazon's own offers as the lowest, even when "a lower offer is available" from another seller, leading customers to "pay more." *Taylor*, 2025 WL 104381, at *1–2. As Judge Pechman explained, those allegations were implausible because Amazon does not represent the price for the Featured Offer as the "lowest priced" offer, Amazon explains the Featured Offer is determined by more than price, and Amazon discloses how sellers and offers are selected for the Featured Offer. *Id.* at *4–5. That Plaintiffs target Subscribe & Save orders does not change the conclusion; they allege that Amazon uses Featured Offers to set artificially low base prices for these orders. *See* Opp. at 22; Compl. ¶¶ 3.41–3.47, 3.64–3.66. And just as the allegations that Featured Offers convey deceptively low prices were insufficient in *Taylor*, they are here too.

### D. Plaintiffs do not dispute—and therefore concede—that they fail to state an unfair practice.

Plaintiffs do not address Amazon's other arguments that they fail to plausibly allege an unfair practice. *See* Mot. at 23–25; Opp. at 16–19. That alone warrants dismissal. *See Walsh*, 471 F.3d at 1037; Local Civil Rules W.D. Wash. LCR 7(b)(2). They do not explain, for example, how they could have experienced "substantial injury" from "fully disclosed" potential price increases, how they could not have reasonably avoided any such injury, or how the purported injury

[5] The 2020 congressional staff report and California investigation Plaintiffs cite are far afield. *See* Opp. at 7, 10. Neither concerns Subscribe & Save or Amazon's contract terms or disclosures about pricing. Documents about unrelated competition issues and other programs are not plausible allegations about Subscribe & Save or Plaintiffs' orders.

outweighs the benefits of recurring deliveries at disclosed prices with a discount and that can be canceled any time. They do not allege that "Amazon promises or suggests" customers will receive the lowest available prices or static prices for Subscribe & Save orders and in any event, Amazon "fully disclosed" potential price increases. *King v. Amazon.com Servs. LLC*, 2026 WL 628261, at *4–5 (W.D. Wash. Mar. 6, 2026) (dismissing unfairness claim under the CPA where the allegation was unsupported and "even less plausible when viewed in conjunction with [Amazon's] disclosures").

If Plaintiffs' reference to the "danger" of a "subscription model" is meant to defend their unfairness theory, it fails. Plaintiffs contend that "consumer inertia" prevents customers from securing better prices during the life of a subscription, Opp. at 10, but simply asserting that some consumers might respond that way to some subscription programs does not plausibly support *these* plaintiffs' theory about *this* subscription program. It is undisputed that Plaintiffs were not locked into a fixed-term subscription with no way to cancel or review other offers. *See id.* at 1, 11–12. And their own behavior undercuts any claim that Subscribe & Save kept them from "vet[ting] prices": they allegedly identified a lower-priced (one-time) offer after comparison shopping. *See id.* at 2; *Takano v. Nelson*, 2020 WL 3403056, at *5 (W.D. Wash. June 19, 2020) (Tsuchida, M.J.) (rejecting a theory that the plaintiff "speculate[d]" about "in his opposition brief" because "there are no factual allegations in the amended complaint to support such a claim").

### E. Plaintiffs do not plausibly allege reliance on any specific statement about Subscribe & Save pricing.

Plaintiffs still do not identify any *specific* statement about Subscribe & Save pricing that they read or reviewed before they signed up. They just continue to gesture at unidentified "Subscribe & Save Program prices and advertisements" and conclude that somehow shows reliance. *See* Opp. at 22–23; *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990, 996 (Wash. 2020) (reliance required under the CPA where that is the "causation theory"). It does not. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 859 (W.D. Wash. 2023) (no causation under the CPA where the "Complaint contains no allegations that Plaintiffs viewed or heard any of those statements or were otherwise aware of them at the time they purchased their [] devices"). Nor

could Plaintiffs have reasonably inferred static pricing, lowest-available pricing, or continuous monitoring of prices offered by other sellers from any statements on product detail pages or Amazon's disclosures. *See* Mot. at 8–9, 20–21 (reasonable consumer standard applies).

### F. Plaintiffs do not explain how they could amend to allege a plausible CPA claim.

Plaintiffs request leave to amend, but they do not explain how they could possibly overcome their pleading defects, given the terms to which they agreed and Amazon's other disclosures. *See* Opp. at 24. Amendment is futile under these circumstances, and the Court should dismiss without leave. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (dismissal without leave to amend "as a matter of law" where "other available information . . . would quickly dissuade a reasonable consumer from [the plaintiff's erroneous] belief"); *Haywood v. Amazon.com, Inc.,* 2023 WL 4585362, at *11 (W.D. Wash. July 18, 2023) (amendment would be futile because exercising a "right permitted by the contract and disclosed to Plaintiff" is "not an unfair or deceptive act or practice"); *In re Amazon Serv. Fee Litig.*, 2024 WL 3460939, at *9 (dismissal of a CPA theory "without leave to amend" where Amazon had disclosed the information and the plaintiff's complaint was only that it was not disclosed in his "preferred method"). The Court should do the same here because Plaintiffs cannot plead around the terms to which they agreed or Amazon's other disclosures.

## III. CONCLUSION

For these reasons, the Court should dismiss the Complaint.

Dated: October 2, 2026

I certify that this memorandum contains 4,130 words, in compliance with the Local Civil Rules.

*s/ Mallory A. Gitt*
Mallory A. Gitt, WSBA No. 50025
MGitt@mofo.com
Kyle D. Cole, WSBA No. 58111
KCole@mofo.com
Morrison & Foerster LLP
925 Fourth Avenue, Floor 36
Seattle, WA 98104-1157
Telephone: (206) 327-6500
Facsimile: (206) 260-8813

*Attorneys for Amazon.com, Inc.*